UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GILBERTO ESTRADA PEREZ,

                    Petitioner,                         Case No. 1:09-cv-244

v.                                                      Honorable Paul L. Maloney

KENNETH McKEE,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. Petitioner is serving a term of ten to thirty years, imposed by the Kent County Circuit Court

on May 25, 2006, after a jury convicted Petitioner of assault with intent to rob while armed, MICH.

COMP. LAWS § 750.89. In his *pro se* petition, Petitioner raises four grounds for relief, as follows:

I.      THE PROSECUTION'S EVIDENCE WAS INSUFFICIENT TO PROVE
        BEYOND A REASONABLE DOUBT THAT MR. PEREZ COMMITTED
        AN ASSAULT, SO AS TO SUPPORT A CONVICTION OF ASSAULT
        WITH INTENT TO COMMIT ROBBERY, ARMED OR UNARMED.

II.     MR. PEREZ WAS DENIED HIS STATE CONSTITUTIONAL RIGHTS TO
        A FAIR TRIAL, 6TH AMENDMENT RIGHTS TO A FAIR TRIAL AND
        PROPERLY INSTRUCTED JURY, AND HIS 14TH AMENDMENT
        RIGHTS OF DUE PROCESS AND TO PRESENT A DEFENSE, WHERE
        THE TRIAL COURT DID NOT CHARGE THE JURY WITH ATTEMPT-
        ASSAULT AS A LESSER OFFENSE, ALTHOUGH IT WAS SUPPORTED
        BY THE RECORD AND CONSISTENT WITH THE DEFENSE THEORY
        AND EVIDENCE.

III.    MR. PEREZ WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE
        EFFECTIVE ASSISTANCE OF COUNSEL, UNDER EITHER THE
        *STRICKLAND* OR *CRONIC* STANDARDS, WHERE COUNSEL ARGUED

A POSSIBLE GUILTY VERDICT THAT WAS NOT AVAILABLE TO THE JURY.

IV.    MR. PEREZ WAS DENIED HIS STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, 6TH AMENDMENT RIGHTS TO A FAIR TRIAL AND PROPERLY INSTRUCTED JURY, WHERE THE TRIAL COURT'S CONFUSING INSTRUCTIONS EFFECTIVELY REMOVED ATTEMPT AS AN OPTION, AND DIRECTED A GUILTY VERDICT ON THE ASSAULT CHARGE; FURTHER, THE INSTRUCTIONS IMPROPERLY REFERRED TO A "REASONABLE PERSON" STANDARD, INSTEAD OF DIRECTING THE JURY TO FOCUS UPON THE ACTUAL VICTIM.

Respondent has filed an answer to the petition (docket #10) stating that the grounds should be denied because they are non-cognizable state law claims or are without merit. Petitioner filed a reply (docket # 21). Upon review and applying the AEDPA standards, I find that the petition should be denied.

## Procedural History

### A.    Trial Court Proceedings

Petitioner and his co-defendant, Keith Burnell Davis, were charged with assault with intent to rob while armed in connection with a foiled liquor store robbery in Grand Rapids. Petitioner and Davis were tried before a jury beginning May 22, 2006, and concluding on May 25, 2006.[1]

Patricia Parbel testified that she had owned the Party Line Store at 1809 Plainfield in Grand Rapids for 18 years. (Tr. III, 39.) While Parbel was working at the store on January 14, 2006, at about 12:45 a.m., a man came in the back door and was "acting a little weird" and milling around. (Tr. III, 41.) Parbel identified the man as Keith Davis. (Tr. III, 46.) Davis came up to her

---

[1]The trial transcripts will he referred to as follows:
"Tr. I"    - Trial Transcript Volume I, May 22, 2006 (docket #13)
"Tr. II"   - Trial Transcript Volume II, May 23, 2006 (docket #14)
"Tr. III" - Trial Transcript Volume III, May 24, 2006 (docket #15)
"Tr. IV" - Trial Transcript Volume IV, May 25, 2006 (docket #16)

and asked for the price on a pint of liquor. Parbel glanced over at the back door and saw a second man standing outside. Parbel identified Petitioner, Gilberto Perez, as the second man. (Tr. III, 47.) When she made eye contact with Petitioner, he moved away from the door. (Tr. III, 41-42.) At that point, Davis walked back past Parbel and left through the back door. (Tr. III, 42.) Parbel believed that the two men were together and got a bad feeling from them. (Tr. III, 41-42.) Parbel stayed behind the register and moved the phone next to her. (Tr. III, 42.) A few minutes later, Petitioner walked through the back door. (Tr. III, 42, 55.) He was wearing sun glasses, had his collar up and was wearing a cap. (Tr. III, 42.) Parbel grabbed the phone and started to dail 911. As she was dialing, she asked Petitioner why he was wearing sunglasses in the middle of the night. Petitioner walked up and put a note on the counter. (*Id*.) Parbel did not read the note because she was looking at Petitioner's hand, which he was holding in his pocket in a manner "insinuating he's got a gun." (Tr. III, 42-43.) Petitioner said, "Give me the money." (Tr. III, 43.) Parbel refused and said, "Show me the gun." Petitioner replied, "Give me the money or I'll kill you." Parbel continued to refuse his demands and asked to see the gun. Parbel also was talking to the police dispatcher, saying that she had an armed robber in the store. (*Id*.)

At that moment, Parbel's fiancé, William Tufflemire (whom Parbel referred to as "Bill"), walked through the front door of the store. (Tr. III, 43.) Parbel told Bill that Petitioner was trying to hold her up. (*Id*.) Petitioner told them to "Give it up," but Parbel continued to refuse his demands. Petitioner tried to reach for the register, but Parbel hit his hand with a flashlight. (Tr. III, 43-44.) Bill left briefly and returned with an iron shovel. Bill hit Petitioner with the shovel and then tackled him to the floor. (Tr. III, 44.) Parbel walked by the back door and saw Greg, one of her regular customers, coming up to the store. (*Id*.) She initially told Greg not to come in because they had an armed robber, but ultimately let him in to help Bill. (Tr. III, 44-45.) Greg told Parbel that

there was another man outside.  (Tr. III, 45.)  Parbel went out the back door to see where the other man was going.  Parbel saw Davis walking down the sidewalk, but when he heard the door open, he turned around and began walking toward Parbel. (*Id*.)  Before Davis could reach her, a police officer came through the door behind Parbel and ordered him down.  (Tr. III, 46.)

Parbel testified that she told the police officer that Petitioner had put a note on the counter, but she had not read it.  (Tr. III, 57.)  The officer found the note, which read, "Give me the money, or I'll kill you."  (Tr. III, 57-58.)  According to Parbel, Petitioner also stated, "Give me the money, or I'll kill you," and "Give it up."  (Tr. III, 59.)  From the way Petitioner was holding his hand in his pocket and threatening to kill her, Parbel believed that he might have a gun, but she wanted to see if he really had one before she gave him anything.  (Tr. III, 60.)  Parbel testified that she was afraid, but not fearful enough to give him the money.  (Tr. III, 69.)  Parbel had a video surveillance tape of the counter area that she turned over to police.  (Tr. III, 60-61.)  Two portions of the video were played for the jury -- the first portion was when Davis came in the store and the second portion was when Petitioner came in and attempted the robbery.  (Tr. III, 62-65.)  The 911 tape also was played for the jury.  (Tr. III, 67.)  Parbel testified that she had no way of knowing whether Petitioner actually had a gun.  (Tr. VIII, 75.)  She had been robbed in the past and chased after robbers who had guns and fired at her.  (Tr. III, 76.)

William Tuffelmire, Parbel's fiancé, testified that he arrived at the party store at about 12:55 a.m.  (Tr. III, 78.)  After Tuffelmire came in through the front door, Parbel told him, "This guy's robbing me."  (Tr. III, 79.)  Tuffelmire got closer and Petitioner turned and pointed his pocket at him.  (Tr. III, 80, 83.)  Petitioner was holding his hand in his pocket in a way that looked like he had a gun.  (Tr. III, 79.)  Tuffelmire assumed that Petitioner had a gun.  (Tr. III, 80.)  Tuffelmire

- 4 -

could hear Parbel tell the robber that she wanted to see the gun or she wasn't going to give him the money. (Tr. III, 79-80.) When the robber reached toward the cash register, Parbel hit his hand with a flashlight. (Tr. III, 80.) Tuffelmire went to look for a weapon and found a snow shovel. By the time Tuffelmire came back with the shovel, Petitioner was leaving, so Tuffelmire hit him in the back with the shovel and tackled him. (*Id*.) Another customer helped to hold Petitioner down until the police arrived. (Tr. III, 81.)

Gregory Gidley testified that he lived close to the party store and was a regular customer. (Tr. III, 100.) When Gidley went to the store during the early morning hours of September 14, he noticed someone outside the store who was acting suspiciously. (Tr. III, 101.) As Gidley approached the back door, the person moved around the side of the building and looked like he was trying to hide. (Tr. III, 101-103.) Gidley was unable to identify the person that he saw outside. (Tr. III, 19.) When Gidley went in the back door, Parbel initially told him to leave because there was an armed robber in the store. (Tr. III, 103-04.) When Gidley realized that Bill had the robber down on the floor, he came in the store and helped to subdue the robber until the police arrived. (Tr. III, 104.)

Grand Rapids Police Officer Michael Maycroft testified that he was only half a block from the party store when police dispatch announced a possible robbery in progress. (Tr. III, 87.) When Officer Maycroft arrived, he saw Mr. Tuffelmire and Mr. Gidley holding Petitioner down on the floor. (Tr. III, 87, 89.) Maycoft proceeded to handcuff and search Petitioner. Maycroft did not find any weapons, but found a note in Petitioner's front right pocket that said, "Give me the money, or I'll kill you." (Tr. III, 88-89.) Parbel told Maycroft that Petitioner showed her the note, but then must have taken it back. (Tr. III, 89.) Maycroft also observed an amber-colored beer bottle on the

floor in close proximity to where he handcuffed Petitioner. (*Id.*) Petitioner's breath smelled of alcohol. (Tr. III, 95-96, 98.) Petitioner also had twenty cents and some other items on his person, but no identification. (Tr. III, 92, 113.) Maycroft described Parbel's demeanor as, "Excited, scared, nervous. She was shaking. Very upset." (Tr. III, 94.) Maycroft did not have any contact with the second suspect. (Tr. III, 90.)

Grand Rapids Police Officer John Wetzel testified that he arrived at the front door of the store just a few seconds after Officer Maycroft. (Tr. III, 118.) Wetzel observed some individuals on the ground in the back of the store and Maycroft advised him that there was another suspect out back. (Tr. III, 118.) Wetzel ran out the back door and found Parbel, who pointed at an individual standing just beyond the parking lot, saying, "He's the other one." (Tr. III, 118.) There was no one else in the area when Parbel identified the suspect. (Tr. III, 118-19, 123-24.) Wetzel drew his gun on the suspect, who he identified as Defendant Davis, and ordered him to the ground. (Tr. III, 119, 123-24.) Davis hesitated, but ultimately complied with Wetzel's commands. Wetzel handcuffed Davis and conducted a brief search. (Tr. III, 119.) Davis was not carrying identification, but Wetzel was able to identify him using a photo index in the computer located in his patrol car. (Tr. III, 120.)

Officer Wetzel testified that he read Davis his rights and Davis agreed to talk to him. (Tr. III, 125.) Davis told Wetzel that he had known Perez for about a year, but did not know him very well. Davis initially told Wetzel that he and Perez originally had made contact near the store, but later admitted that they had met about four blocks down the street. (Tr. III, 128.) Davis stated that he and Perez went to the store to buy liquor. Davis did not have any identification, so Perez had to make the purchase. According to Davis, Perez told him to wait out back, but Davis did not know

that Perez was going to rob the store. (Tr. III, 126.) Davis allegedly went in the store first to see how much the alcohol would cost, and then went out and gave Perez $4.00 to make the purchase. (*Id*.) Wetzel learned from the other police officers on the scene that Perez did not have any money in his possession at the time of his arrest. (Tr. III, 126-27.) Wetzel confronted Davis with that information, but Davis continued to insist that he gave Perez $4.00 to purchase alcohol. (Tr. III, 127.) Watzel testified that it was possible that Davis was intoxicated, but did not notice the smell of alcohol or any slurring of his words. (Tr. III, 134.) Davis was not agitated and seemed confused about why he was being arrested. (Tr. III, 135.)

After the trial court instructed the jury, the jurors received a verdict form that included the charged offense of assault with intent to rob while armed, as well as assault with intent to commit unarmed robbery, attempted armed robbery and attempted unarmed robbery. Defense counsel objected to the trial court's failure to include attempted assault with intent to rob, armed or unarmed. (Tr. IV, 108-11.) Counsel argued that, under the Michigan Supreme Court's decision in *People v. Reeves*, 580 N.W.2d 433 (Mich. 1998), the facts presented in this case supported an instruction on attempted assault. (Tr. IV, 111-15.) Believing that the trial court would instruct the jury on that offense, defense counsel had argued to the jury during closing arguments that Petitioner was not guilty of the charged offense of assault with intent to rob, but may have been guilty of attempted assault with intent to rob. (Tr. IV, 47-48.) The trial court disagreed with counsel's interpretation of the *Reeves* decision and found that the jury had been properly instructed. (Tr. IV, 111-16.)

At the conclusion of trial, the jury found Petitioner and Davis guilty of the charged offense of assault with intent to rob while armed. (Tr. IV, 118-21.) On July 10, 2006, the trial court

sentenced Petitioner as a fourth habitual felony offender to a prison term of ten to thirty years. (Sentencing Transcript, 10, docket #17.)

### B. Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals. His brief, which was filed by counsel on March 5, 2007, raised the same four issues raised in this application for habeas corpus relief. (*See* Def.-Appellant's Br. on Appeal, docket #18.) By unpublished opinion issued on January 29, 2008, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's convictions and sentences. (*See* 1/29/08 Mich. Ct. App. Opinion (MCOA Op.), docket #18.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same four claims raised before and rejected by the Michigan Court of Appeals. By order entered July 29, 2008, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., docket #19.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at

411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly

established federal law is "objectively unreasonable." *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly

presumed to have been made on the merits, and a federal court cannot grant relief unless the state

court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S.

Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692

F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to

appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA

deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where

other circumstances indicate that the state court has not addressed the merits of a claim, the court

conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only

decided the issue based on a state standard different from the federal standard, the presumption

arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that

the state-court's decision was on the merits "may be overcome when there is reason to think some

other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534

(2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

<u>**Discussion**</u>

I.      <u>**Sufficiency of the Evidence**</u>

In his first ground for habeas corpus relief, Petitioner contends that the prosecutor

failed to present sufficient evidence that he committed an assault for purposes of his conviction for

assault with intent to commit robbery, armed or unarmed.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The elements of assault with intent to commit armed robbery are: (1) the commission of an assault with force and violence, (2) an intent to rob or steal, and (3) the defendant's possession of a dangerous weapon, "or any article used or fashioned in a manner to lead a person so assaulted

reasonably to believe it to be a dangerous weapon." MICH. COMP. LAWS § 750.89; *People v. Akins*, 259 Mich. App. at 554, 675 N.W.2d 863 (2003). In this case, Petitioner challenges the sufficiency of the evidence on the assault element of the offense. The crux of Petitioner's insufficiency claims is that the store owner never believed that Petitioner actually was armed with a firearm, and, thus, did not fear that he could carry out his death threats.

The Michigan Court of Appeals rejected Petitioner's claim of insufficient evidence, stating:

> Defendant Perez first argues that the prosecutor presented insufficient evidence that he assaulted the storeowner, which requires us to vacate his conviction. We disagree. "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). In deference to the trial court's findings, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).
>
> Assuming, for the sake of argument, that defendant correctly asserts that fear is a necessary element to the apprehension type of criminal assault, the prosecutor still presented sufficient evidence to justify conviction on the assault charge. The storeowner testified that she thought defendant was armed with a gun, and her fiancé did not physically challenge defendant until after he had retrieved a weapon that might equalize a physical contest between him and an armed man. Perez made every effort to persuade his victims that he had a firearm in his pocket, and he threatened to take their lives if they resisted. These actions supported the application of the statute's language, "being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon," MICH. COMP. LAWS § 750.89, and justified the charge of assault with intent to commit armed, rather than unarmed, robbery. *People v Jolly*, 442 Mich 458, 468; 502 NW2d 177 (1993). The jurors had the opportunity to view the surveillance videotape, and they were in the best situation to assess the credibility of the storeowner, her fiancé, and other witnesses. *Nowack, supra*. Contrary to Perez's contention that there was no evidence of an assault, there was ample evidence demonstrating that the victim reasonably apprehended an imminent battery. *Reeves, supra* at 244. Therefore, defendant's evidentiary challenge fails outright.

(MCOA Op. 3-4.)  In addressing Petitioner's claims regarding the jury instructions, the Michigan Court of Appeals conducted a deeper analysis of the crime of assault as it relates to the offense of assault with intent to rob while armed.  The court discussed:

> The statute that defines assault with intent to rob while armed specifically requires an assault, MCL 750.89, and in *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979), our Supreme Court quoted *People v Sanford*, 402 Mich 460, 479; 265 NW2d 1 (1978), for the proposition that a criminal assault required either an attempted battery or an act that instilled in the victim the reasonable apprehension that he or she was about to be battered. However, the focus of *Sanford, supra* at 475-479, was the principle that fear was not a mandatory element of a criminal assault. To add support to its conclusion, the Supreme Court in *Sanford* cited an early Court of Appeals case, *People v Syakovich*, 32 Mich App 356, 357; 188 NW2d 642 (1971). In S*yakovich*, the defendant brandished a toy pistol, pointed it at the sales clerk, and took money from the cash register. This Court upheld the trial court's acceptance of the defendant's guilty plea for assault with intent to rob while armed, even though the judge never took evidence that the sales clerk was intimidated or frightened by the toy pistol. *Syakovich, supra*. The Court reviewed the statutory language and expressly held, "Under the provisions of MCLA § 750.89 . . . , it is not necessary that the victim of an assault with intent to rob being armed be put in fear." *Id*. When, in *Reeves*, our Supreme Court reiterated the dual aspects of criminal assault announced in *Sanford*, it recast the definition slightly to focus on the egregiousness of the conduct rather than the happenstance of its effect on the victim. It stated:

>> This adjunctive definition not only broadens the concept of criminal assault to include aspects of assault's definition in tort, but also treats that form of assault as a substantive offense with a mental element that is distinct from the attempted-battery form of assault, and is satisfied where an actor engages in some form of threatening conduct designed to put another in apprehension of an immediate battery. [*Reeves, supra* at 240-241 (emphasis added).]

> However, in the later analysis of the defendant's present ability to commit the threatened battery, the *Reeves* Court simultaneously presented divergent approaches to the issue before us. In a single paragraph it explained that it would not deviate from the theory of criminal assault that primarily addresses the menacing behavior of the defendant "because it appropriately focuses on the imminent danger that is *threatened*, rather than on the 'actual' ability to inflict injury. Therefore, the assault element is *satisfied* where the circumstances indicate that an assailant, by overt conduct, *causes* the victim to reasonably *believe* that he will do what is threatened." *Id*. at 244 (emphasis added). Taking this paragraph at face value, the question

presented by the Supreme Court's language is whether criminal assault only requires a reasonably believable threat, or whether it requires the victim's actual honest belief in the validity of the threat.

Taking this paragraph in context, however, greatly simplifies the legal issue. This language did not insert an element of subjective fear into the crime of assault; it stood in direct opposition to it. It reiterated that our case law has always maintained that the subjective element of fear simply has no place in a criminal assault trial apart from an inferential determination of whether a rational person in the victim's shoes would have reasonably believed that the defendant's behavior threatened an immediate battery. In other words, a ridiculous circus gag does not amount to felonious assault merely because a nervous six-year-old really believes that the brightly colored cannon, whose wick is fast disappearing amid a shower of sparks, will imminently launch a clown-shaped cannonball into his lap. Nor does criminal assault lie when a tardy, unarmed, would-be passenger shouts creative threats of bodily harm at a punctual bus driver who has already pulled away from the stop and accelerated well beyond the range and speed of the human sprint.

On the other side of the same coin as this "present ability" requirement is the understanding that "fear on the part of the victim need not be proved in the crime of assault." *Commonwealth v Slaney*, 345 Mass 135, 141; 185 NE2d 919 (1962), cited with approval in *Sanford, supra* at 479. In *Slaney*, an assailed woman's intrepid escort frankly testified that he never feared that the defendant, the woman's spurned lover, would actually shoot him with the firearm he openly brandished and pointed at him. *Slaney, supra* at 136-137. The court rejected defense counsel's argument that assault did not lie against the defendant because the victim was never actually intimidated by the defendant's show of force. *Id*. at 138. The court reasoned, "The criminal law is designed primarily to preserve the public peace. The imperturbability or fortitude of a victim, or the unawareness of an intended victim, should not afford a defence to the criminal prosecution of the wrongdoer" *Id*. at 138-139. The court explained that "in this Commonwealth neither fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault." *Id*. at 139, quoted with approval in *Sanford, supra* at 479. In short, a victim''s subjective emotional response to a defendant's behavior does not exonerate him any more than it condemns him.

(MCOA Op. 4-6 (footnote omitted).) Thus, after undertaking a thorough analysis of state law, the court of appeals concluded that fear on the part of the victim is not a necessary element of assault for purposes of assault with intent to commit robbery. The Court further held that, even if fear was an element of the offense, the prosecutor presented sufficient evidence that the victim was in fear of an imminent battery.

- 14 -

On habeas review, Petitioner continues to argue that *Reeves* requires a finding that the victim was placed in subjective fear, which directly conflicts with the Michigan Court of Appeals' interpretation of the statute and case law. The state court's reasonable interpretation of the crime of assault is not subject to challenge on habeas corpus review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).

There was ample evidence in this case to support the finding of an assault, as defined by the court of appeals. Parbel testified that Petitioner walked up to the counter and held his hand in his pocket in a manner that looked like he was pointing a gun at her. (Tr. III, 42-43.) Petitioner then demanded money and threatened to kill her if she did not comply. (Tr. III, 43, 57-58.) This evidence was sufficient to show that Petitioner engaged in threatening conduct that was designed to

put Parbel in fear of being shot.  Moreover, as discussed by the Michigan Court of Appeals, there was sufficient evidence of an assault even if fear on the part of the victim was a necessary element. The victim believed that Petitioner might have had a gun from the way he was holding his hand in his pocket and threatening to kill her.  (Tr. III, 60.)  She further testified that she was afraid, although she was not fearful enough to give him the money.  (Tr. III, 69.)  The victim described herself as "stubborn" and testified that she had repelled past attempted robberies by individuals who turned out to be armed.  (Tr. III, 76.)  The first police officer who responded to Parbel's 911 call described her demeanor as, "Excited, scared, nervous.  She was shaking.  Very upset."  (Tr. III, 94.)  On the basis of the victim's testimony, the jury could reasonably conclude that Petitioner placed Parbel in fear of being shot.  Consequently, the decision of the Michigan Court of Appeals was not an unreasonable application of *Jackson*.

II.    **Jury Instructions**

Petitioner raises two claims arising from the jury instructions.  In Ground II, Petitioner claims that the trial court violated his federal rights when it did not charge the jury with the lesser offense of attempted assault with intent to rob.  In his fourth ground for relief, Petitioner  further argues that the trial court violated his federal rights by improperly instructing the jury on the assault element of the offense.

A.    *Failure to instruct on lesser included offense*

Applying state law, the Michigan Court of Appeals concluded that the trial court did not err by failing to instruct the jury on the lesser included offense of attempted assault with intent to rob because it was not supported by the evidence:

> Perez next argues that the trial court erred by failing to provide the jury with an instruction for the crime of attempted assault with intent to rob. We disagree. It

is not error to refuse to charge on a lesser offense or attempted offense that is not supported by the evidence. *See People v Patskan*, 387 Mich 701, 712-713; 199 NW2d 458 (1972), cited with approval in *People v Cornell*, 466 Mich 335, 355-356; 646 NW2d 127 (2002). Consistent with the holding in *Patskan*, the trial court in the case at bar found that the facts only suggested that Perez fully performed the acts forming the basis of the assault charge and did not support a finding that his efforts to confront the storeowner were peremptorily thwarted by, say, a locked door or a debilitating fall from the back stairs. Under the circumstances, the trial court correctly ruled that the facts did not suggest an attempted assault but instead only indicated, at most, an attempted robbery. *See Patskan, supra* at 713-714. As stated in *People v Akins*, 259 Mich App 545, 552-53; 675 NW2d 863 (2003), attempted robbery is a necessarily included lesser offense of assault with intent to rob while armed, and the only difference between them is the assault element. Therefore, if the jurors found that Perez's behavior had no reasonable hint of menace or legitimate threat, then the assault element would fail, leaving only Perez's attempt to rob the store. The facts supported this instruction, and it was properly provided. Therefore, we find no merit in Perez's argument that the trial court improperly instructed the jury. Our review of the record likewise contradicts his claims of prejudice regarding the verdict form and the timing of its presentation to the jury. Perez's sole argument is that the trial court should have reviewed the actual form, and not merely its substance, with defense counsel before providing it to the jury. However, he fails to demonstrate how the timing affected his defense when defense counsel knew the substance of the form in advance.

(MCOA Op. 7.)

The Sixth Circuit Court of Appeals, sitting *en banc*, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc). The *Bagby* Court held that failure to instruct on lesser-included offenses in a noncapital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure. *Id.*; *accord Tegeler v. Renico*, 253 F. App'x 521, 524 (6th Cir. 2007); *Todd v. Stegal*, 40 F. App'x 25, 28-29 (6th Cir. 2002); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Shortly after the Sixth Circuit decision in *Bagby*, the

Supreme Court emphasized that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)). Instead, the only question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72.

Here, there is no miscarriage of justice or fundamental defect in due process. The trial court's refusal to instruct the jury on attempted assault with intent to rob concerned an interpretation of Michigan law, which later was upheld by the Michigan Court of Appeals. A state court's interpretation of state law is not subject to habeas corpus review. *See Bradshaw*, 546 U.S. at 76. Furthermore, no clearly established Supreme Court authority requires lesser-included offense instructions in non-capital cases. *See Draper-El v. Doom*, 467 F. App'x 438, 439 (6th Cir. 2012). The jury was instructed on other lesser offenses, so Petitioner was not deprived of an opportunity for leniency by the jury. Under the AEDPA, 28 U.S.C. § 2254(d)(1), this claim is not a basis for habeas relief. *Todd*, 40 F. App'x at 28 (citing *Estelle*, 502 U.S. at 71-72)).

B. *Instructions on assault*

Petitioner argues that the trial court's instructions to the jury blurred the distinction between an attempt and assault, and effectively directed a finding of an assault if there was a "confrontation." Petitioner further contends that the trial court instructed the jury to apply a reasonable person standard, rather than to make a finding beyond a reasonable doubt that the victim in this case believed that Petitioner would carry out his threat.

The Michigan Court of Appeals rejected Petitioner's claim, stating in part:

The trial court provided lengthy instructions to the jury, which included the preliminary explanation that "[a]n assault simply means to engage in some form of

- 18 -

threatening conduct which is designed to put another person in fear of being hurt, provided you were close enough to carry it out." The court went on to explain that a particular victim's subjective experience of fear was not as important as Perez's intent to scare or intimidate the victim and whether an ordinary person facing the same conduct would reasonably perceive a legitimate threat of harmful contact. The trial court added that if Perez's actions were so unpersuasive and ridiculous that a reasonable person would not have apprehended any real threat of harm from him, then the jury should not convict him of the charge. These instructions properly accounted for the circumstances of the robbery and anything the storeowner or her fiancé may have observed that would have definitely convinced them that Perez's threats were an absolute farce and that he was objectively harmless. In this context, we agree with the trial court that a victim's subjective experience of the emotion of fear is not an element of assault, even in "apprehension" types of criminal assault cases. *See Syakovich, supra*. Therefore, although somewhat cumbersome in parts, the jury instructions as a whole provided adequate protection of the defendant's rights and fairly presented the issues to the jury. *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

(MCOA Op. 6-7 (footnote omitted).)

As set forth above, a claim that a trial court gave improper jury instructions that violated state law typically is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *see also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same). "Jury instructions are reviewed as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Poulsen*, 655 F.3d 492, 501 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1772 (2012). The state court of appeals reviewed the trial court's instructions to the jury (Tr. IV, 70-107) and found that, evaluating the instructions as a whole, the jury was fully and properly instructed on the offense of assault with intent to rob while armed. This decision does not run afoul of the holding of any Supreme Court decision, nor are there grounds

to conclude that the jury was confused or misled. Petitioner, therefore, is not entitled to habeas corpus relief as a result of the trial court's instructions to the jury.

III.    **Ineffective Assistance of Counsel**

In his third ground for habeas relief, Petitioner alleges that his Sixth Amendment right to the effective assistance of counsel was violated when his trial counsel argued a possible guilty verdict that was not available to the jury. Specifically, counsel argued to the jury that Petitioner only could be found guilty of attempted assault with intent to rob when, in fact, the jury was not given the opportunity to find Petitioner guilty of that offense.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that

counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 131 S. Ct. at 788 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

The Michigan Court of Appeals found that counsel's argument to the jury was a matter of sound trial strategy, stating:

> Finally, we reject Perez's allegation of ineffective of assistance of counsel because he fails to persuade us that his trial counsel's actions were anything other than sound trial strategy. *See People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Perez argues that his trial counsel provided ineffective assistance by arguing that the jury should convict, if at all, only for attempted assault with intent to rob. Although it is true that defense counsel's tactic was not as successful as he may have originally anticipated, Perez had few options open to him in light of the unassailable evidence against him.[3] The legal position taken by trial counsel was supported by a fair reading of precedent, including *Reeves, supra*, so the soundness of the strategy was not affected by the trial court's decision to instruct the jury that an objective, rather than subjective, standard of belief applied. "[W]here the evidence obviously points to defendant's guilt, it can be better tactically to admit guilt and assert a defense or to admit guilt on some charges but maintain innocence on others." *People v Matuszak*, 263 Mich App 42, 60; 687 NW2d 342 (2004). This is exactly the case before us. We are further persuaded that defense counsel knew that the trial court was disinclined to present the attempted assault option to the jury, and that his arguments to the jury about attempted assault were a strategic attempt to force the trial court's hand or win a not-guilty verdict from a somewhat confused jury panel. We are not persuaded that either the trial court or defense counsel mismanaged this matter.

It bears noting that trial counsel's strategy also advanced the secondary, and legitimate, theory that no reasonable person would have felt threatened by Perez's finger-gun pointed pocket, so he could not have committed an assault. *See Reeves, supra*. Although the trial attorney's efforts to press attempted assault rather than attempted robbery were overambitious in hindsight, *see People v Stanaway*, 446 Mich 643, 688; 521 NW2d 557 (1994), Perez fails to demonstrate that his counsel's actions were anything short of shrewd. The record amply reflects that Perez's trial attorney was an informed, dedicated, creative, and proficient legal advocate. Perez's objections regarding the jury form and its presentation were adequately preserved, so we reject any claim that his trial counsel prejudiced his legal position on those issues. Under the circumstances, Perez's trial counsel advocated his client's position well and presented as strong a defense as possible, and Perez's arguments to the contrary lack merit.

[3]Remarkably, Perez's appeal reiterates the same factual and legal arguments that defense counsel presented below, lending credence to the soundness of trial counsel's strategy in the face of the evidence confronting his client.

(MCOA Op. 7-8.)

Counsel's decision to pursue a conviction for attempted assault with intent to rob was a matter of trial strategy. Counsel's strategy was based upon a reasonable, although ultimately unsuccessful, interpretation of *Reeves*. It is obvious from the Michigan Court of Appeals' analysis in this case that Michigan law was less than clear on the elements of an "assault" for purposes of assault with intent to rob. Moreover, it was undisputed that Petitioner approached the victim, demanded money and threatened to kill her if she did not comply. In light of these facts, Petitioner undoubtedly was guilty of some offense. While defense counsel did not get the instruction on attempted assault with intent to rob that he was hoping for, counsel worked aggressively and diligently to obtain the best possible outcome for his client. The fact that the strategy was not successful does not amount to ineffective assistance. *See Hamilton v. Jackson*, 416 F. App'x 501, 508 (6th Cir. 2011).

Even if counsel's conduct fell below an objective standard of reasonableness, Petitioner cannot establish prejudice. With regard to the prejudice prong of the *Strickland* test, the "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In this case, the jury had the option of convicting Petitioner of other lesser offenses, including attempted robbery, armed and unarmed, but found him guilty of the charged offense of assault with intent to rob while armed. The jury's verdict relied upon a finding that Petitioner committed an assault. I concluded above that, under Michigan law, there was sufficient evidence to support the finding of an assault. In light of the jury's verdict, there's no reasonable probability that the jury would have reached a different decision had counsel argued the case differently. Thus, counsel's performance did not render the proceedings fundamentally unfair. Accordingly, the decision of the Michigan Court of Appeals was not a unreasonable application of *Strickland*.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:   September 23, 2013                    /s/  Joseph G. Scoville                              
                                              United States Magistrate Judge


- 23 -

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).